FILED

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

97 MAR 12 AM 9:40

U.S. DISTRICT COURT
N.D. OF ALABAMA

MS LIFE INSURANCE CO., et al.,        )
   Plaintiffs,                                    )
                                                      )
v.                                                     )         No. 95-P-3184-S
                                                      )
SHIRLEY AND PARKER FLUKER   )
   Defendants.                                 )

ENTERED

MAR 1 2 1997

## OPINION

A motion for judgment on the pleadings by third-party defendant Adamson Ford was considered at a prior motion docket. For the following reasons, the motion by Adamson Ford to dismiss the Flukers' counterclaims is due to be granted in part and denied in part. As well, this court had requested additional briefing regarding Count 5 of the Flukers' amended counterclaim. After receiving and reviewing the additional briefing, Count 5 is due to be dismissed as to MS Casualty and DSC.

### Facts and Allegations

This case was initiated when MS Life Insurance Company, MS Dealer Service Corporation ("DSC"), and MS Casualty Insurance Company (the MS plaintiffs) filed a Complaint for Declaratory Judgment to determine liability concerning insurance purchased in conjunction with financing to buy a new car. The Flukers counterclaimed, adding Premier Finance Company ("Premier") and Adamson Ford ("Adamson") as third-party defendants, and adding class action claims. The putative class includes "all persons with whom Adamson, Premier, MS Life, DSC, and MS Casualty have entered into contracts and/or financing in Alabama using substantially similar forms, contracts and conduct."

Shirley and Parker Fluker purchased an automobile in a credit sale pursuant to a Retail Installment Contract and Security Agreement from Adamson Ford on August 12, 1993. Adamson

31

had a program under which it sold cars to customers like the Flukers with low credit ratings, and it represented that it would provide the couple with financing at a rate of interest comparable to that offered to persons with a high credit rating. As a condition of the extension of credit, Adamson required that the Flukers pay for credit life and credit insurance from MS Life and a mechanical repair contract from DSC and MS Casualty. Adamson assigned the Retail Installment Contract and Security Agreement to Premier.

The Retail Sales Agreement lists the items financed, including the credit life and disability insurance and the service contract. The Flukers claimed that Adamson and Premier violated the Truth in Lending Act ("TILA") and the Mini-Code of Alabama by including the cost of the credit insurance and the service contract in the "amount financed" rather than the "finance charge" portion of the agreement. According to the Flukers, the premiums for the credit life and disability were thereby impermissibly high, the finance charge and annual percentage rate in the sales agreement were incorrect, and representations concerning interest payable on the contract violated the TILA and the Mini-Code. Based on the same allegations, the Flukers raised state law tort claims against all plaintiffs and third-party defendants.

The Flukers' counterclaims include: Count 1) violation of TILA and the Mini-Code by Adamson and Premier, Counts 2-4) fraud and civil conspiracy in the sale and issuance of insurance contracts against all plaintiffs and third-party defendants, Count 5) fraud by Adamson, MS Casualty, and DSC in misrepresenting that MS Casualty and DSC were authorized insurers under the laws of Alabama, and that they were authorized to collect insurance premiums in the state, Count 6) breach of duty of good faith by Adamson and the MS plaintiffs in concealing monies being paid to Adamson in connection with the sale of insurance proceeds and misrepresenting that DSC and MS Casualty

2

were authorized insurers under the laws of Alabama, Count 7) outrage by all plaintiffs and third-party defendants in charging excessive premiums and selling of insurance by insurers not authorized in Alabama, Count 8) unconscionability by Adamson and MS Life for overcharging premiums, Count 9) fraud by Adamson in misrepresenting the amount of coverage and in representing that premiums were paid to an insurance company when they were retained by Adamson, and Count 10) assumpsit against Adamson, MS Casualty, and DSC for collecting money the companies had no authority to collect, and therefore for holding money belonging to the Flukers.[1]

On September 19, 1996, motions to dismiss by Premier and the MS plaintiffs were granted in part and denied in part, leaving active Count 1 against Premier and Count 5 against MS Casualty and DSC, as well as all claims against Adamson. Class allegations against MS Life were also dismissed at that time. On September 19, 1996, this court directed the parties to provide additional briefing on the issues raised in Count 5 relating to the question of whether mechanical repair contracts constituted insurance at the time the Flukers' claim arose in light of the May 20, 1996 amendments to the Mini-Code. The parties were also directed to submit a proposed certified question on the issue in a form that might potentially be submitted to the Alabama Supreme Court.

## Analysis

1) The Truth In Lending Act and Mini-Code Claims

The claims against Adamson for a violation of Truth in Lending Act are due to be dismissed. The statute of limitations for violations of TILA is one year from the date of the occurrence of the violation. 15 U.S.C. § 1640. The Flukers entered into the contract with Adamson on August 12,

---

1. All Counts are listed as stated in the most recent statement of Flukers' counterclaims, the Amended Counterclaim and Class Action.

3

1993, and this suit was not filed until December 1995. As such, the TILA clams are time barred.

The Alabama Mini-Code has a more liberal statute of limitations which provides "[n]o action under this section may be brought more than one year after due date of the last scheduled payment of the agreement pursuant to which the charge was made or, in the case of open-ended credit plans, one year after the excess charge is made." Ala. Code § 5-19-19 (1975). The Flukers' contract provided for 42 monthly payments in the amount of $438.51 to begin September 26, 1993. Because presumably the Flukers are still making payments, and there is nothing in the pleadings to indicate otherwise, the Mini-Code claim against Adamson is not time-barred.

3) Fraud and Civil Conspiracy Claims

The fraud and civil conspiracy claims are stated in Counts 2, 3, 4, 5, and 9. The statute of limitations for fraud is two years. ALA. CODE § 6-2-78. However, the Alabama Code provides a savings provision, so the claim must not be considered as having accrued until the aggrieved party discovers, or should have discovered, the facts constituting the fraud. ALA. CODE § 6-2-3. The Eleventh Circuit has concluded that "[w]hile Alabama law governs the length of the limitations period, federal law determines at what point the limitations period begins to run." *Smith v. Duff and Phelps, Inc.*, 891 F.2d 1567, 1571 (11th Cir. 1990). For Adamson to succeed in arguing that all fraud claims are barred by the statute of limitations, the Flukers must have actually known, prior to two years before filing their claims, the facts constituting the alleged fraud. *See, e.g., Kachler v. Taylor*, 849 F. Supp. 1503, 1520-21 (M.D. Ala. 1994); *Park Center Inc. v. Champion International Corp.*, 804 F. Supp. 294, 299 (S.D. Ala. 1992); *Harris v. Howell*, 739 F. Supp. 565, 568 (N.D. Ala. 1989). Fraud is discovered, as a matter of law, when one "receives documents" that put one on notice of the fraud. *Hickox v. Stover*, 551 So.2d 259, 262 (Ala. 1989).

4

The alleged fraud and the conspiracy to defraud of which the Flukers complain in Counts 2-4 arises out of the inclusion of the credit life insurance and mechanical repair contract in the "amount financed" rather than the "finance charge" portion of the retail sales contract. The retail sales agreement is attached as an exhibit to the counterclaim, and it contains an "itemization of amount financed," in which the monies paid to "insurance companies" is plainly listed. There is no suggestion that the parties dissuaded the Flukers from reviewing the contract, that they told the Flukers something different than what was memorialized in the contract for sale, or that the Flukers had an inability to review and understand the agreement. Recognizing that other courts may be more liberal in finding a factual dispute as to this statute of limitations question, the undersigned concludes that the Flukers had actual knowledge of the facts giving rise to the fraud in Counts 2-4 when they signed and received the contract. Therefore, Counts 2-4 are due to be dismissed as to Adamson because they are time-barred.

The fraud claim in Count 5 is based upon MS Casualty, DSC, and Adamson's alleged misrepresentation to the Flukers that DSC and MS Casualty were authorized insurers under the laws of Alabama and were authorized to collect premiums with regard to the sale of insurance products, or, alternately, upon MS Casualty, DSC, and Adamson's alleged suppression of the fact that MS Casualty and DSC were not authorized insurers under Alabama law. The Flukers' claim is based upon their conclusion that mechanical repair contracts constitute contracts of insurance under Alabama law. To reach this conclusion the Flukers rely on *Schoepflin v. Tender Loving Care Corp.*, 631 So. 2d 909 (Ala. 1993). In deciding the MS plaintiffs' Motion to Dismiss on September 19, 1996, this court left unresolved the question of whether mechanical repair contracts constituted contracts of insurance at the time the Flukers' claim arose. After review of the additional briefing and

proposed certified questions submitted by the parties, this court has determined that a certified question to the Alabama Supreme Court is not necessary to resolve this issue. *Schoepflin*, which represents the state of the law at the time the Flukers' claim arose, holds only that mechanical service contracts are insurance contracts for the purposes of supporting a bad faith tort claim, not that they are insurance contracts subject to all of Alabama's laws regulating insurance. *See Schoepflin*, 631 So. 2d at 912. Because mechanical service contracts are not insurance contracts for the purposes of Alabama insurance regulation, MS Casualty and DSC were not required by Alabama law to become authorized insurers before they collected money for their product, and neither a representation that they were so authorized nor a failure to disclose that they were not can support a claim of fraud. Therefore, Count 5 is due to be dismissed as to Adamson, MS Casualty, and DSC.

The fraud claim in Count 9 arises out of Adamson's alleged representations that MS Life would insure each of the Flukers' lives for only the amount necessary to protect the unpaid balance on their installment loan, while MS Life was allegedly insuring them for a substantially higher amount. The Flukers also allege that Adamson represented that the premiums for life insurance were paid to an insurance company, while in reality the premiums were retained in whole or part by Adamson. Because there is no information as to when the Flukers discovered or should have discovered that MS Life was insuring the Flukers' lives for an amount greater than that necessary to protect the unpaid balance of their loan,[2] and because there is no information as to when the Flukers discovered or should have discovered that their premium payments were kept in whole or part by Adamson, the fraud claim in Count 9 is not due to be dismissed at this time.

---

2. Although Exhibit B to the Flukers' Amended Counterclaim and Class Action indicates the original amount of life insurance obtained on the Flukers' lives, the exhibit is not dated. As well, there is no information as to when or if the Flukers learned that the original insurance amount would not decrease as their unpaid loan amount decreased.

6

4) Other State Law Claims

The "breach of duty of good faith" claim in Count 6 is due to be dismissed, because Alabama does not recognize an affirmative tort for the breach of duty of good faith. While such an action is recognized in a bad faith failure to pay an insurance claim, this action relates to the formation of an insurance contract. While Alabama does recognize the general common law rule that "every contract does imply an obligation of good faith and fair dealing," *Hoffman-La Roche, Inc. v. Cambell*, 512 So. 2d 725, 738 (Ala. 1987), this obligation is "simply the obligation to preserve the spirit of the bargain rather than the form . . .[, but] its breach does not give rise to an action in tort." *Id.*

The outrage claim in Count 7 is similarly due to be dismissed. The facts, as averred, do not constitute extreme and outrageous conduct by Adamson intentionally or recklessly to cause the Flukers severe emotional distress. Further, this claim is time barred by ALA. CODE § 6-2-38.

The unconscionability claim in Count 8 is also due to be dismissed. Damages are not an appropriate remedy for an unconscionable contract. *Cowin Equipment Co., Inc. v. General MotorsCorp.*, 734 F.2d 1581 (11th Cir. 1984) (finding the common law and the UCC provide no remedy for an unconscionable contract outside of refusing to enforce specific performance). The unconscionable agreement provision of the Mini-Code similarly does not provide a damages remedy for an unconscionable contract outside of refusal to enforce the agreement or modifying it to remove the unconscionable portion. ALA. CODE § 5-19-16.

Finally, the claim for money had and received in Count 10 is due to be dismissed because "the insurance policies were issued and . . . the insured received the protection afforded by the policies they purchased." *Johnson v. Life Ins. Co. of Alabama*, 581 So. 2d 438, 443 (Ala. 1991).

7

## Conclusion

Because the TILA claims in Count 1 are barred by the applicable statute of limitations, they are due to be dismissed as to Adamson. As well, the fraud and civil conspiracy claims in Counts 2, 3, and 4 are due to be dismissed as to Adamson because they are barred by the applicable statute of limitations. The breach of duty of good faith claim in Count 6 is due to be dismissed as to Adamson because Alabama does not recognize an affirmative tort for the breach of duty of good faith. The outrage claim in count 7 is due to be dismissed as to Adamson because the facts, as averred, do not constitute outrage, and the claim is time-barred by the applicable statute of limitations. The unconscionability claim in Count 8 is due to be dismissed as to Adamson because damages are not an appropriate remedy for an unconscionable contract. The claim for money had and received in Count 10 is due to be dismissed because the insureds received the protection afforded by the policies they purchased.

The fraud claim in Count 5 is due to be dismissed as to Adamson, MS Casualty, and DSC, because a mechanical service contract is not an insurance contract for the purposes of Alabama insurance regulatory laws.

Two claims remain against Adamson. First, the claim against Adamson in Count 1 for violation of the Alabama Mini-Code is not due to be dismissed because it is not barred by the applicable statute of limitations. Second, the fraud claim against Adamson in Count 9 is not due to be dismissed because it is not barred by the applicable statute of limitations.

Dated: March _11_, 1997

_Sam C. Pointer_

Chief Judge Sam C. Pointer, Jr.